[Crim. No. 12983. Second Dist., Div. Three. Oct. 29, 1968]

THE PEOPLE, Plaintiff and Respondent, v. COHODA WILLIAM WADE, Defendant and Appellant.

Charles M. Berg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky

and Elliott D. McCarty, Deputy Attorneys General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—

### Statement of the Case

The defendant was charged by information with the crime of burglary, a felony, in violation of section 459, Penal Code. He was also charged with having suffered three prior convictions of felony.[1] Prior to the trial the defendant admitted the truth of the allegations of the prior convictions of felony. Upon the trial the jury returned its verdict finding the defendant guilty as charged and fixed the crime as burglary of the second degree. Defendant's motion for a new trial and motion in arrest of judgment were denied. After hearing, the defendant's application for probation was denied and sentence to state prison followed. The appeal is from the judgment.

### The Facts

Alfred S. Smith, a police officer for the City of Compton, testified that at 4:53 a.m. on February 4, 1966, while on patrol duty, he received a call, "a 459 alarm," that the silent burglar alarm system had been set off at the Enterprise Junior High School. At approximately 4:54 a.m. he arrived at the school and noticed an unattended 1957 Plymouth automobile with its lights and motor off in the parking lot close to the administration building.

No one was near the vehicle as Officer Smith approached it with the lights on the police vehicle turned off. Officer Smith then observed the defendant coming out of the west gate adjacent to the administration building "walking fast and looking back, . . . He was looking behind him in the direction of the Administration Building." The defendant was carrying a black radio and wore a rubber glove on his left hand and a brown or tan leather glove on his right hand; he was unaware of the officer's presence until he had reached a point within about 15 feet of where Officer Smith was standing, at which time he ceased looking backward and turned his head and looked forward; the moment he observed Officer Smith he

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1] Attempted grand larceny, State of New York, November 1951; receiving stolen property, section 496, Penal Code, Los Angeles County, November 1954; petty theft with prior conviction of felony, section 667, Penal Code, Los Angeles County, June 1956.

launched upon an explanation as to why he had gone into the building; he continued explaining as he walked toward the Plymouth automobile; as he talked, looking the officer directly in the face, he carefully placed his hand in his right front pocket, pulled out a pry bar and threw it behind the driver's seat of the Plymouth. Officer Smith got a good look at the object and recognized it as a pry tool.

Officer Smith then told the defendant not to get into the Plymouth or place anything in it. The defendant continued talking and while doing so, reached into his right rear pocket, took an unidentified object out, and threw it into the back of the vehicle.

At about 4:55 a.m., Officer Melvin Parker arrived at the scene and went directly to the administration building to search for the point of entry. Officer Smith remained with the defendant who had not been formally placed under arrest at that time. Officer Sutton then arrived and stayed with the defendant while Officer Smith took the pry bar and joined Officer Parker in the search for the point of entry.

Officers Smith and Parker found a window in the administration building which appeared to be the point of entry. The width of the pry bar was compared with the indentation on the metal frame of the window and they were found to match. Paint adhering to the pry bar appeared to match the color of the paint on the window frame. They then returned to the Plymouth automobile, placed the defendant under arrest, and advised him of his constitutional rights.

At trial the gloves, radio and pry bar were received in evidence. The defendant, on the witness stand, admitted possession of these articles when the police arrived at the scene of the burglary. The radio was identified by the head counselor of Enterprise Junior High School as one he had previously taken from a student and placed in a filing cabinet in his office located in the administration building. An expert forensic chemist identified paint particles adhering to the pry bar as identical to the paint chips removed from the point of entry.

## Defense

The defendant took the witness stand and testified at the trial. He testified that he stopped on the school grounds to investigate a "grinding noise" coming from the rear end of the vehicle he was driving; he put on the gloves and used the pry bar to remove a hub cap from the car; he was just sitting there looking at the wheel with the hub cap removed when

Officer Smith approached him; he denied going into the administration building or the fenced area next to the building. He admitted prior convictions of attempted grand larceny, a felony (New York, 1951), receiving stolen property, a felony (Los Angeles County, 1954), and petty theft with prior conviction of felony in violation of section 667, Penal Code, a felony (Los Angeles County, 1956).

## The Contentions and the Law

The defendant contends (1) that he was improperly denied the assistance of counsel at the second preliminary hearing on the charge and that he did not make a knowing and intelligent waiver of counsel upon his arraignment for plea in the superior court; (2) the denial of appellant's motion to allow the jury to view the scene of the burglary constituted reversible error; (3) the prior convictions were improperly admitted in evidence; (4) the prosecutor committed prejudicial misconduct; (5) the trial court improperly instructed the jury, and (6) the indeterminate sentence law is unconstitutional.

The reporter's transcript of the first preliminary hearing discloses that such hearing was held in the Municipal Court of the Compton Judicial District on March 7, 1966. The defendant was represented at this hearing by a deputy public defender of Los Angeles County. As a result of this hearing the defendant was bound over for trial in the superior court. The superior court file shows that on March 25, 1966, the defendant appeared in propria persona and successfully argued a motion to dismiss the information pursuant to the provisions of section 995, Penal Code. This motion was heard by Judge Arthur L. Alarcon. Upon dismissal of the information, the district attorney refiled in the Municipal Court of the Compton Judicial District and a second preliminary hearing was held on the charge on April 11, 1966. At this time the defendant moved the court for permission to proceed in propria persona with the request that the public defender be appointed to sit in the proceedings in an advisory capacity. The deputy public defender present objected to being held in the proceedings in an advisory capacity only. The deputy public defender stated to the court that he had explored the case with the defendant over a period of time and he was of the opinion that the defendant was able to ''make a fairly intelligent waiver'' of counsel. The defendant also brought to the court's attention that he had personally and successfully argued the 995 motion in the superior court which had

resulted in the dismissal of the first information. The defendant stated that he understood fully that he would be held to the same standards and rules of evidence as though he had counsel. The court then discharged the deputy public defender from further duties in the case and permitted the defendant to conduct the preliminary hearing in propria persona.

At the conclusion of the second preliminary hearing the defendant was again bound over for trial in the superior court.

On the date set for his arraignment for plea upon the second information, he again appeared before Judge Alarcon who had heard the 995 motion on the first information. At this time the defendant moved the trial court to allow him to proceed in propria persona. The trial judge recognized the defendant and remembered that he had been successful in obtaining a dismissal of the first information upon motion under section 995, Penal Code. At this time the following colloquy occurred between the defendant and the judge: "THE COURT: . . . Just for the record in this case, what education have you had?

"THE DEFENDANT: I finished one year of college, and I had schooling in the Army, and I worked for the Provost Marshal, and I worked for a lawyer.

"THE COURT: And you have also represented yourself in other matters before the Court?

"THE DEFENDANT: Yes.

"THE COURT: In one case, in a matter successfully before this Judge?

"THE DEFENDANT: Yes.

"THE COURT: The court finds you are competent to represent yourself."[2]

At this time, April 25, 1966, the defendant moved to set the second information aside under section 995, Penal Code. The motion was heard and denied on April 27, 1966.

 The probation report shows that the defendant was born on September 11, 1923, which would place his age at approximately 42 years and 5 months at the time the initial proceedings were commenced which ultimately culminated in

---

[2]The information contained the allegations of prior convictions of felony and the serving of a term of imprisonment in state prison as to each conviction. (See footnote 1 of this opinion.)

The report of the probation officer shows that the defendant had contact with the police or the courts for violation of penal statutes twelve times in addition to the three instances charged in the information.

his conviction. He had a comparatively good education and had worked in positions which would lend aid to him in representing himself on a criminal charge. He had been exposed to criminal prosecutions on numerous occasions. He had successfully defended himself in the superior court upon the within charge by obtaining a dismissal of the first information upon motion under section 995 of the Penal Code. In this state of the record we are of the opinion that the magistrate, at the second preliminary examination, did not abuse his discretion in denying the defendant's motion to have a deputy public defender appointed to sit with the defendant in an advisory capacity only during the course of such examination. (*People* v. *Mattson*, 51 Cal.2d 777, 797 [336 P.2d 937].) We are also of the opinion that the record supports the trial court's finding that the defendant was competent to represent himself, in that he understood the nature of the charge, the elements of the offense, the pleas and defenses which were available and the punishments which might be exacted. (*People* v. *Carter*, 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].)[3]

Section 1119 of the Penal Code authorizes the trial court to permit the jury to view the scene of the crime. The granting or the denial of a motion to view the premises rests in the sound discretion of the trial court. (*People* v. *Conway*, 207 Cal.App.2d 657, 660 [24 Cal.Rptr. 635].) The burden is upon the moving party to affirmatively show such discretion has been abused. *People* v. *Sampo*, 17 Cal.App. 135, 151 [118 P. 957].) The defendant has failed to sustain this burden and we are unable to see where he was prejudiced by the failure of the jury to view the premises.

The defendant contends that the prior convictions of felony were improperly admitted in evidence for the purpose of impeachment and for the purpose of increasing the minimum sentence pursuant to the provisions of subdivision (c) of section 3024 of the Penal Code, because it was not shown that

---

[3]We might add that the superior court file is replete with legal documents prepared and filed by the defendant including some 19 instructions submitted, some of which are taken from CALJIC and some of which are predicated upon case law, all of which indicate that the defendant was well aware of the legal problems involved. The record also shows that the defendant represented himself upon a charge of burglary committed on February 22, 1966, having waived his right to counsel. Upon conviction he represented himself on the appeal. He did not raise the question of his competency at any stage of this proceeding. (*People* v. *Cohoda William Wade*, 2d Crim. No. 13162, opinion filed January 3, 1968, and not published.)

he was represented by counsel at the time of such convictions. The defendant did not challenge the validity of the prior convictions either before trial or at the trial. On the other hand, he admitted the truth of the allegations of prior convictions. Had these allegations been challenged at the trial level, the prosecution would have been afforded an opportunity to establish their regularity and validity. The burden of initiating inquiry into the constitutional basis of a prior conviction lies with him who would challenge its validity rather than with the trial court. One seeking to challenge prior convictions charged against him may do so only through a clear allegation to the effect that, in the proceedings leading to the prior convictions under attack, he was neither represented by counsel nor waived the right to be so represented. The constitutional challenge to the validity of the prior convictions not having been raised in the trial court, such challenge may not be reviewed on direct appeal from the judgment. (*People* v. *Merriam*, 66 Cal.2d 390, 396-398 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Coffey*, 67 Cal.2d 204, 215-216 [60 Cal.Rptr. 457, 430 P.2d 15].)

▆▆ The defendant contends that the prosecutor committed prejudicial misconduct. This contention is based upon a question asked by the prosecutor of the witness Gordon Pierce, the custodian of the Enterprise Junior High School, bearing upon the operation of the silent burglar alarm system. The question was asked during the following sequence of questions and answers: ''Q. Is that building equipped for an alarm system? A. Yes, it is. Q. What kind of alarm is it; do you know? A. Silent alarm. Q. And do you know how that alarm is activated? A. Yes. Q. How is it? A. But I prefer not to. Q. I see what you mean. Well, is the alarm system set up so that if a window is opened the alarm would go off?

''DEFENDANT WADE: Objected to.

''THE COURT: Overruled. Answer the question.

''THE WITNESS: Not a window. Not—that is involved. That involves security. So I would answer that but not—— Q. BY MR. FUKUTO: You don't—— A. —not in the courtroom. Q. Okay. Fine.

''DEFENDANT WADE: Your Honor, portions of the statement were made. I would like the portions——

''THE COURT: The entire answer will be stricken. Rephrase the question.

''Q. BY MR. FUKUTO: Is the alarm set up so that it would go off after entry is made inside the building? A. If that involves

security and if you want to I will answer the question to you, and——

"THE COURT: It is a proper question. I think that can be answered either yes or no, sir. Answer the question.

". . . . . . . . . . . . . .

"THE WITNESS: Yes.

"Q. BY MR. FUKUTO: And I take it you don't want to give us the details because perhaps it might get into the wrong hands as to how it is set up; is that correct? A. That's right.

"DEFENDANT WADE: Your Honor, I object to that.

"THE COURT: Sustained."

There was no motion to strike any portion of the foregoing testimony nor did the defendant request an admonition that the jury disregard it. The defendant argues that the portion of the last question asked by the prosecutor wherein he suggested that the information concerning the details of the operation of the silent burglar alarm, if given in open court, might fall into the wrong hands, contained an implication of his guilt of the crime charged. The trial of the case was open to the general public. There was a possibility at the time these questions were asked that the reporter's transcript of the proceedings could become a public record. This possibility has now ripened into a reality. The questions and answers were directed to the security of the school premises based on a policy of the school administration. There is nothing therein which directs the questions or the answers thereto either directly or indirectly towards the guilt of the defendant, and the defendant suffered no prejudice thereby.

The defendant contends that the trial court improperly instructed the jury. This contention is based on the giving of the following instruction: "Jurors are not required to surrender their convictions for the mere purpose of agreeing upon a verdict. If any juror entertains a reasonable doubt of guilt of defendant, it is his duty not to vote for a verdict of guilty nor to be influenced in so voting." This instruction appears to have been given on the court's own motion. It contains a proper statement of the law, and is favorable to the defendant. We find no error in the court having given it.

The defendant next contends that the indeterminate sentence law is in violation of the Eighth Amendment to the United States Constitution made applicable to the states under the Fourteenth Amendment to the United States Con-

stitution.[4] (See *Robinson* v. *California* (1962) 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417].) The question of the constitutionality of the indeterminate sentence law has been before the appellate courts of this state before and it has been held to be constitutional. (*People* v. *Ray,* 181 Cal.App.2d 64, 68 [5 Cal.Rptr. 113]; *Fleischer* v. *Adult Authority,* 202 Cal.App.2d 44, 46-47 [20 Cal.Rptr. 603]; *People* v. *Leiva,* 134 Cal.App.2d 100, 103 [285 P.2d 46]; *In re Lee,* 177 Cal. 690, 692-696 [171 P. 958]; *In re Larsen,* 44 Cal.2d 642, 648 [283 P.2d 1043].) The question whether the indeterminate sentence law inflicted cruel and unusual punishment upon the offender in violation of the Eighth Amemdment to the United States Constitution and article I, section 6 of the California Constitution was not before the appellate courts, however, in the foregoing cases.

It has been uniformly held that the indeterminate sentence is in legal effect a sentence for the maximum term. (*In re Lee, supra,* 177 Cal. 690, 693.) In considering the nature and the purpose of the indeterminate sentence law, it has been said: "It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law. like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime. They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing. Instead of trying to break the will of the offender and make him submissive, the purpose is to strengthen his will to do right and lessen his temptation to do wrong." (*In re Lee, supra,* pp. 692-693; 2 Witkin, Cal. Crimes (1963) § 988, p. 941.) The defendant has not pointed out, and we fail to see how the indeterminate sentence law, which affords a person convicted of crime the opportunity to minimize the term of imprisonment by rehabilitating himself in such manner that he may again become a useful member of society, can be held to constitute the infliction of cruel and unusual punishment in violation of the federal and state Constitutions. To strike the law on the ground that it violates the constitutional rights of the defendant on the reasons urged would constitute a step

---

[4]The Eighth Amendment to the United States Constitution reads as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

backwards in the treatment and rehabilitation of those convicted of crime.

The defendant also argues that Penal Code, sections 3022 and 3042 impliedly authorize a prisoner to have representation by counsel at a parole hearing proceeding. This issue is not properly before this court. As heretofore pointed out, the scope of review on appeal is limited to the proceedings which led to the judgment under review.

The defendant was granted permission to file a brief in propria persona. In order to further illustrate his legal ability and to satisfy his litigious disposition, he filed an opening brief containing 38 pages and a closing brief containing 18 pages. He urges that (1) "Detention of defendant was, in effect, arrest and without probable cause"; (2) "The search and seizure was illegal, violated appellant's rights; and all evidence should have been excluded"; (3) "Court erred in not returning seized evidence and in not excluding them from evidence"; (4) "Perjured testimony deprived appellant of a fair and impartial trial, due process, and aided in causing an illegal conviction"; (5) "Suppression by the prosecution denied due process and caused an illegal conviction"; (6) "Violation of P. C. 1202 entitles appellant to a new trial"; (7) "Error of court was committed in not providing appellant, acting in Propria Persona, a copy of the probation report and in not giving proper time for appellant to examine and prepare for hearing on same"; (8) "Arrest without warrant is illegal where no probable cause is shown."

On the question of the arrest and probable cause therefor, the record shows that Officer Smith went to the scene of the crime at an early hour in the morning after receiving notice that the silent burglar alarm on the premises had been activated. Upon arrival at the scene he observed the defendant retreating from an area in close proximity to the administration building on the school property. The defendant was wearing gloves and was carrying a radio. The defendant's conduct before he observed Officer Smith and his speech after observing him were something less than would be expected of a person engaged in a legitimate enterprise. The defendant, while attempting to distract the officer's attention, withdrew a pry bar from his pocket and tossed it into his vehicle. This combination of circumstances was sufficient to furnish probable cause for the defendant's arrest upon a charge of burglary. The fact that Officer Smith did not place the defendant under arrest formally until after an examination of the building and

the comparison of certain marks found on the building with the pry bar, and the comparison of the paint found on the pry bar with that found on the window frame at the point of entry, did not militate against the right to make the arrest prior to such examination and comparison.

We have considered the other contentions of the defendant in the light of the record, and find them to be without merit.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied November 13, 1968, and appellant's petition for a hearing by the Supreme Court was denied December 24, 1968.