[Crim. No. 14690. First Dist., Div. One. Sept. 8, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN JOSEPH O'BRIEN et al., Defendants and Appellants.

## COUNSEL

A. Leonard Bjorklund, Jr., under appointment by the Court of Appeal, Bonjour, Gough, Stone & Remer, Jules F. Bonjour, Jr., and Richard C. Stone for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**[*]—Defendants and appellants appeal from a judgment of the Marin County Superior Court, after jury verdict, convicting defendants of violation of section 459 of the Penal Code (burglary).

### ISSUES PRESENTED[1]

1. The trial court did not err in denying appellant Steven O'Brien's motion for discovery of the identity of the informant.

2. The use of an *in camera* hearing did not violate appellants' constitutional and statutory rights.

3. The safe and pickup truck were not obtained as the result of illegal police conduct.

4. The trial court did not err in refusing to grant the motion for mistrial because of a witness' reference to a lie detector test.

5. There was no abuse of discretion in permitting the jury during daylight hours to view the surveillance positions of certain officers.

6. There was no error in admitting in evidence posed photographs.

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Issues 1-3 are raised by appellant Steven O'Brien. Issues 4-6 are raised by appellant Timothy O'Brien, who also incorporates by reference the issues raised in Steven's brief.

## RECORD

Appellants Steven Joseph O'Brien and Timothy Mark O'Brien were charged by information with violation of section 459 of the Penal Code (burglary). Appellants' motion for discovery and motions pursuant to Penal Code section 995 and 1538.5 were heard by the court and denied. The jury found both appellants guilty as charged. Both appellants appeal from the judgment.

## FACTS

On the evening of October 11, 1974, several law enforcement officers were conducting a surveillance of appellants' apartment residence at 47 Lyford Drive in Tiburon. At approximately 7:30 p.m. appellants and a woman who also occupied the apartment were observed leaving the apartment in a blue MG. Ten minutes later the MG returned to the area of the apartment. The woman was driving and appellants were not in the car.

At 10:30 p.m. appellant Timothy O'Brien appeared on foot "sneaking through the bushes" at the rear of the apartment. A few minutes later he walked from the apartment to a white Chevrolet pickup truck parked in front. He checked the tailgate and lock. A car approached and Timothy ducked down under the right rear of the truck until the car passed. He then got into the truck and drove down Lyford and turned onto Round Hill Road.

Shortly thereafter Officer Lundquist observed the truck turning from Spring Lane onto Round Hill Road approaching Lundquist's car. He identified the driver of the truck as appellant Steven O'Brien. Officer Wiley, who was stationed in a parking area on Round Hill Road, observed the truck pass him and identified Timothy O'Brien as a passenger in the truck.

The truck traveled down Round Hill Road and then turned onto Lyford Drive at a high rate of speed. Officer Kerns, on routine patrol duty in a marked police car, followed the truck and turned on his lights and siren. The truck disappeared and Kerns and Wiley commenced searching for it. They found the truck parked at the end of Corinthian Court with the doors open and the tailgate down.

On the evening of October 11, 1974, the home of Robert Hadley located on Spring Lane in Tiburon was burglarized. Among the items taken from the Hadley residence was a safe.

On the afternoon of the following day, the Hadleys' safe was discovered lodged behind a retaining wall down a hill at the end of Corinthian Court near the area where the truck had been found. Paint samples and plaster castings were taken of the bed of the truck and were compared with the safe. A criminalist testified that tests showed the paints were of a common origin and that marks on the bed of the truck were made by the safe.

Appellants were taken into custody on October 16, 1974. Appellant Steven O'Brien was released on bail on October 21, 1974. On October 24, 1974, the pickup truck was stolen from the Tiburon Corporation Yard where it had been stored after it had been impounded. Lieutenant Manick of the Tiburon Police Department received information from an unidentified informant that the pickup truck was located in a private garage in Larkspur, California. Police officers contacted Stephen Marsili, one of the lessees of the garage, who told them and who testified at trial, that he had received a telephone call from Steven O'Brien inquiring whether Marsili would paint a truck for him. Marsili arranged to meet him that evening to discuss the painting of the truck. However, Steven did not appear at the scheduled time. Later that evening Marsili returned to his shop and found the truck there.

1. ██ The trial court did not err in denying appellant Steven O'Brien's motion for discovery of the identity of the informant.

Appellant Steven O'Brien filed a motion for discovery and for disclosure of the identity of the informant who informed Lieutenant Manick that the pickup truck was located in a private garage in Larkspur. An *in camera* hearing was held on the motion pursuant to Evidence Code section 1042, subdivision (d),[2] after which the court concluded that there was no reasonable possibility that the failure to disclose the identity of the informer would deprive appellants of a fair trial.

---

[2]"When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person

■ It is well settled that when a defendant makes an adequate showing that an informer may be a material witness on the issue of guilt or innocence, disclosure should be compelled or the case dismissed. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]; *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 842-843 [83 Cal.Rptr. 369, 463 P.2d 721].) ■ "[A] defendant seeking to discover the identity of an informant bears the burden of demonstrating that, 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' [Citations.] That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." (*People* v. *Garcia* (1967) 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366].) These principles were once again reaffirmed in the case of *People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1].)

■ Appellants have not met their burden of demonstrating that there is a reasonable possibility that the informant could give any evidence on the issue of guilt which might result in defendants' exoneration. Despite the fact the crime of which appellants were charged and convicted is the burglary of the Hadley residence, appellants state, "It is of no consequence that the informant may or may not have any information directly concerning the burglary, since he is clearly a material witness as to the issue of [Steven O'Brien's] involvement or lack thereof in removing the truck from the Tiburon corporation yard and causing it to be placed in Stephen Marsili's shop in Larkspur. It was the defense's position in seeking to disclose the informant's identity at trial

---

authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (Evid. Code, § 1042, subd. (d).)

that someone other than [Steven O'Brien] was responsible for moving the truck to the Marsili shop."

Since appellants have not demonstrated that the informant would be a material witness on the issue of guilt of the crime charged or that nondisclosure of his identity would deprive them of a fair trial, it is concluded that the identity of the informant need not have been disclosed. Whether someone other than appellant Steven O'Brien was responsible for moving the truck to Marsili's shop is immaterial to the issue of the crime charged which occurred some time before the truck was moved. Marsili's testimony linked Steven O'Brien to the truck recovered in Marsili's garage. Even if the informant could give evidence that someone other than Steven brought the truck to the garage, such information would not be material to the issue of appellants' guilt of the burglary of the Hadley residence.[3]

2.  ■  The use of an *in camera* hearing did not violate appellants' constitutional and statutory rights.

Appellants contend that use of an *in camera* hearing as provided for in Evidence Code section 1042, subdivision (d) deprived them of their

---

[3]The court has read the transcript of the *in camera* proceedings, and it does not appear that the trial court was sufficiently concerned with the issue of materiality, but was concerned with the danger to the informant if the informant's identity were to be made public. There is some merit to appellants' contention that the court balanced the need to disclose the informant's identity with the need to protect the informant. Language in *People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 81 [103 Cal.Rptr. 583], suggests this kind of balancing process. In that case, it was stated: "A reading of the transcript of the *in camera* hearing leaves no doubt that the informant's information could be of no help to defendant, and that the concealment of his identity could not possibly deprive defendant of a fair trial. *Assuming, however, that there is a bare possibility that the informant's information could possibly benefit defendant, that benefit would be of so little value that it should not be weighed against the great harm to the public and to the informant which would result from the disclosure of the informant's identity.*" (Italics added.)

The test is whether there is a "reasonable" possibility, not a "bare" possibility, so the above language is correct.

It cannot be said that the transcript of the *in camera* hearing in the instant case leaves no doubt that the informant's information could be of no help to appellants because the transcript indicates that the hearing dealt with the danger to the informant. Evidence Code section 1042, subdivision (d) states in pertinent part: "At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." The name of the informant was disclosed to the judge but was done off the record.

However, in this case the defense did not meet its burden of demonstrating that the informant would be a material witness on the issue of guilt of the crime charged. Moreover, it does not seem possible that the informant could have had information that would be helpful to the appellants.

constitutional rights of confrontation, cross-examination, compulsory process and the effective use of counsel.

In *People* v. *Pacheco* (1972) 27 Cal.App.3d 70 [103 Cal.Rptr. 583], a similar constitutional attack was made upon the *in camera* procedures and the court held that the *in camera* hearing did not violate the Sixth Amendment. There the court stated (at p. 82): "It is the invocation of the basic privilege that denies the informer's name to the defendant, not the *in camera* hearing, which is only the method by which the court determines the applicability of the privilege. If the Sixth Amendment were to apply, it would deny the privilege, the right to which has been determined to be valid."

The United States Supreme Court has also upheld the prosecution's privilege to withhold disclosure of an informant's identity. In *Roviaro* v. *United States* (1957) 353 U.S. 53, 59 [1 L.Ed.2d 639, 644, 77 S.Ct. 623], the court stated: "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." The court further stated (at p. 62 [1 L.Ed.2d at p. 646]): "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

Furthermore, it is noted that the *in camera* hearing is only one phase of a more extended, adversary hearing (*People* v. *Pacheco, supra,* 27 Cal.App.3d 70 at p. 82; *People* v. *Superior Court* (1971) 19 Cal.App.3d 522, 531, fn. 14 [97 Cal.Rptr. 118]), and that a record of the *in camera* proceedings is maintained in order that a defendant who assails an unfavorable ruling may obtain appellate review of the proceedings. (Evid. Code, § 1042, subd. (d).)

3. ▇ The safe and pickup truck were not obtained as the result of illegal police conduct.

▇

Appellants contend that the safe and pickup truck were obtained as the result of illegal police conduct and that the trial court erroneously admitted testimony concerning them. Appellants contend that the flight of the pickup truck was in direct response to an illegal detention and, therefore, the evidence obtained as a result of subsequently recovering the truck and the safe, being a product of the illegal police conduct, must be suppressed.

Prior to trial appellants moved pursuant to Penal Code section 1538.5 to suppress evidence. Appellants' motion was based on the transcript of the preliminary examination and on evidence presented at trial. The following is a summary of the evidence adduced at these hearings.

On October 11, 1974, Detective Kim of the Tiburon Police Department set up a surveillance of appellants' apartment at 47 Lyford Drive in Tiburon. The surveillance was established because there had been seven burglaries in a one-mile radius of appellants' apartment within the preceeding two weeks and the Tiburon police were aware that appellants had prior arrest and conviction records for burglary. Kim coordinated the surveillance which involved law enforcement officers from several agencies. Two officers were in fixed surveillance positions and other officers were in unmarked vehicles. The officers were in radio contact with Kim and were instructed to report appellants' movements during the evening.

At about 7:30 p.m., officers advised Kim that appellants and a woman left the apartment and drove away in a blue MG down Lyford. Approximately 10 minutes later the MG turned onto Lyford Drive from Round Hill Road and parked in front of appellants' apartment. The woman was the driver and sole occupant of the car.

At approximately 10:30 p.m. appellant Timothy O'Brien was observed coming through the bushes on the hillside behind his apartment. Within a few minutes he left the apartment and walked to the rear of the white pickup truck parked in front of his apartment. When a car came up Lyford with its headlights on, he ducked to the right rear of the truck until the car passed. He then got into the driver's seat of the truck and drove down Lyford and up Round Hill Road.

Approximately 10 to 15 minutes later, Officer Lundquist observed the truck turn from Spring Lane onto Round Hill Road. He identified the

driver of the truck as appellant Steven O'Brien. The truck passed Lundquist on the wrong side of the road and nearly collided with him. Officer Wiley, in an undercover vehicle parked along Round Hill Road, saw and identified Timothy O'Brien as a passenger in the truck.

Meanwhile, Officer Kerns, who was on routine patrol, had been informed of the surveillance. At about 10:30, he was instructed by Detective Kim to take position at the intersection of Lyford and Round Hill Road. Shortly thereafter, he observed the truck coming down Round Hill Road at a high rate of speed. Its tires squealed as it made a left turn onto Lyford. He estimated the speed of the truck to be 40 miles per hour before it reached the intersection and 30 to 35 miles per hour as it made the turn. The speed limit in the area is 25 miles per hour. Deciding that he had reasonable cause to stop the vehicle, he turned on his red light and siren. As he was pulling out of his parked position, he received orders from Kim to stop the truck. Officer Kerns and other undercover officers followed the truck but it eluded them. Some minutes later, the truck was found abandoned at the end of Corinthian Court. The following day the police learned of the Hadley burglary. The Hadley safe was found that afternoon in the area where the abandoned truck was found.

Appellants concede that it is the law that "circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning." (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) However, citing *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423 [82 Cal.Rptr. 484, 462 P.2d 12], they contend that the officers' observations on the night of October 11, 1974, do not provide a rational suspicion that some unusual activity related to crime was taking place and that a subsequent detention would have been unlawful. They further contend that because the flight of the pickup truck was in response to the threatened detention, evidence obtained as a result of subsequently recovering the truck and the safe must be suppressed in accordance with *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269 [294 P.2d 23], and *Gascon* v. *Superior Court* (1959) 169 Cal.App.2d 356 [337 P.2d 201].

It appears from the record that the officers had sufficient justification to stop the truck and question the occupants. The officers were aware that there had been seven burglaries within a one-mile radius of appellants' apartment within the preceding two weeks and that appel-

lants had prior arrest and conviction records for burglary. Moreover, Timothy O'Brien was observed approaching his apartment through the bushes on the hillside behind his apartment and some minutes later ducking out of sight of approaching headlights. In addition, the truck was speeding when the detention attempt was initiated. It is concluded that these factors do establish rational suspicion of crime to justify temporary detention. (See *Terry* v. *Ohio* (1968) 392 U.S. 1, 22-23 [20 L.Ed.2d 889, 906-908, 88 S.Ct. 1868]; *People* v. *Henze* (1967) 253 Cal.App.2d 986, 989-990 [61 Cal.Rptr. 545].)

Because there was no threat of an illegal detention or search, *Badillo* v. *Superior Court, supra,* 46 Cal.2d 269, and *Gascon* v. *Superior Court, supra,* 169 Cal.App.2d 356, are not applicable. (See *In re Michael V.* (1974) 10 Cal.3d 676, 681-682 [111 Cal.Rptr. 681, 517 P.2d 1145].)

4. ■ The trial court did not err in refusing to grant the motion for mistrial because of a witness' reference to a lie detector test.

David Jones, a witness called on behalf of appellant Timothy O'Brien, testified that on the evening of October 11, 1974, Timothy was at the Mill Valley Middle School gym from about 7 or 7:30 p.m. to 9:45 p.m. At 9:45 they went to Denny's Restaurant in Corte Madera and remained there until approximately 11 p.m. They returned to the gym and Timothy left.

Jones testified that he had been intimidated regarding his testimony by Detective Verdi of the Sausalito Police Department. Verdi took the stand and was questioned by the prosecutor regarding a conversation he had had with Jones prior to trial. Verdi's testimony concerning the conversation concluded as follows: "He [Jones] asked me about being a police officer . . . and asked me what I thought of it, where he should go, employment opportunities and things like this, and then he brought up the point that 'I really hope this doesn't affect, you know, anything I plan to do. I have always had good relationships with police departments and things like this.' And I didn't—I said, 'You know, I don't see why it should or anything.' And, we went on talking about—oh, yes, and then I remember saying that the problem here is that I myself am involved. I personally saw Steve and Tim at the alleged place and there is no way in the world they can convince me otherwise and there are three other officers who saw him there, and he said something contradictory and I said it would be nice if we could all take a polygraph, it would be one way of solving this and he didn't say anything—he said yes—."

At that point the defense interrupted the testimony and moved for a mistrial. After discussion in chambers, the motion was denied and the jury admonished, "Officer Verdi referred in his testimony to a lie detector test and David Jones' conduct with respect thereto. You are admonished that all of that evidence is stricken from the record and you are to treat it as though you had never heard of it." It appears that the prosecutor was unaware that a reference to a lie detector test was part of the conversation. The court specifically found that the prosecutor had acted in good faith.

Citing *People* v. *Schiers* (1971) 19 Cal.App.3d 102 [96 Cal.Rptr. 330], appellant Timothy O'Brien contends that despite the admonition to the jury the reference to the lie detector test constituted reversible error. Although "[E]vidence of the willingness of a party or witness to take a lie detector test or of the results of a lie detector test is inadmissible and is generally held to constitute prejudicial error" (*id.,* at p. 108), it is concluded that the error in this case was not prejudicial. The reference to the lie detector test here does not with certainty refer to the willingness of the witness to take the test. Moreover, the remark itself was so brief and of such a general nature that any effect the remark may have had on the jury is deemed to have been cured by the prompt admonition. It is concluded that it is not reasonably probable that a result more favorable to appellant would have been reached in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

5. ■ There was no abuse of discretion in permitting the jury during daylight hours to view the surveillance positions of certain officers.

Appellant Timothy O'Brien contends that the court abused its discretion in permitting the jury to view, during daylight hours, the surveillance positions of Officers Denney, Verdi, Wiley and Williams. The jury's view of various other areas was agreed to by all counsel; however, with respect to these officers' surveillance positions, appellant objected below and contends on appeal that permitting the jury to view these positions in daylight was an abuse of discretion because the activities which the officers observed took place at night. The court overruled the objection and stated, "For the record, the Court has seen the video tape on this thing and the video tape looks a great deal different to the Court than the actual photographs that have been admitted into evidence. [¶] The Court feels that an observation by the jury will be very helpful in this case."

Penal Code section 1119 specifically authorizes the trial court to determine whether such a viewing is proper. "The fact that physical conditions upon or about the premises may have been to any degree altered is a fact to be considered by the trial court in exercising its discretion to permit or refuse to permit such view and its conclusion in that regard will not be disturbed upon appeal in the absence of a clear showing of an abuse of such discretion." (*People* v. *Pompa* (1923) 192 Cal. 412, 421 [221 P. 198].) It is concluded that the court did not abuse its discretion in this case.

Appellant also contends that the court did not give the jury a cautionary instruction. However, the record does not indicate that appellant requested such an instruction. Moreover, the record indicates that appellant waived the reporting of any descriptions or instructions which occurred at the viewing sites.

6. ■ There was no error in admitting in evidence certain posed photographs.

Appellant Timothy O'Brien contends that the court erred in admitting certain photographs into evidence. Exhibit 94 was admitted into evidence after Officer Denney testified that the photograph accurately depicted the lighting conditions as they existed on the night of October 11, 1974. Exhibit 105 was admitted into evidence after Officer Wiley testified that the photograph accurately depicted the position of Wiley's vehicle at the time he made his observations. Exhibit 106 was admitted into evidence after Wiley testified that the photograph depicted the view he had of appellant as appellant passed him in the pickup truck. Exhibit 107 was admitted into evidence after Officer Wiley testified that it accurately depicted the view down Lyford Drive toward Tiburon Boulevard.

In *People* v. *Smith* (1963) 223 Cal.App.2d 394, 407 [36 Cal.Rptr. 119], it was held that certain posed photographs were admissible. There the court stated: "[A]lthough taken at a date subsequent to the robbery, the pictures represented an accurate reproduction of the scene as it appeared to the witnesses at the time of the crime. No prejudice appears where a witness uses a photograph as a 'chalk' to better explain that to which he is testifying." In Witkin, California Evidence (2d ed. 1966) section 638, page 601, it is stated: "[T]he better view seems to be that such a posed picture is admissible where relevant and where a proper foundation is

laid by testimony which shows that the reconstruction or reenactment is accurate."

Appellant contends that foundational requirements were not met and that the prejudicial impact of the photographs outweighs their probative value. "To authenticate a photograph a foundation must be laid by showing that the picture is a faithful representation of the objects or persons depicted. The showing must be made by a competent witness who can testify to personal knowledge of the correctness of the representation." (Witkin, Cal. Evidence, *supra*, § 636, p. 599.) It is concluded that the foundational requirements were adequately met.

In regard to appellant's second contention, it is concluded that the trial court did not abuse its discretion in determining that the probative value of the photographs outweighed any prejudicial impact. A trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse. (*People* v. *Delgado* (1973) 32 Cal.App.3d 242, 251 [108 Cal.Rptr. 399], disapproved on other grounds in *People* v. *Rist* (1976) 16 Cal.3d 211 at pp. 221-222 [127 Cal.Rptr. 457, 545 P.2d 833].)

Judgments affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied November 4, 1976.