[Crim. No. 23044. First Dist., Div. One. Mar. 4, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL JAMES MOORING, Defendant and Appellant.

454

COUNSEL

Gary P. Snyder, under appointment by the Court of Appeal, and Kully, Jameson & Snyder for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LEVINS, J.*—On September 19, 1980, the District Attorney of Contra Costa County filed an information in the superior court alleging that appellant had violated Health and Safety Code section 11378 (possession of controlled substance for sale). The information also alleged five prior felony convictions pursuant to Penal Code sections 667.5, subdivision (b) and 1203, subdivision (e)(4). On September 22, 1980, appellant pled not guilty and denied the prior convictions.

On May 15, 1981, appellant filed a "Notice of Motion Objecting to Composition of Jury Panel," which motion was heard on May 18, 1981, prior to the selection of the jury, and was denied. Out of the presence of the jury, appellant admitted the five prior felony convictions and jury selection commenced. The presentation of evidence began on May 19, 1981, the case was submitted to the jury on May 21, 1981, and appellant was found guilty.

On June 18, 1981, the court heard and denied the motion for the new trial. Appellant was sent to state prison for the aggravated term of three years and sentenced to two consecutive one-year terms pursuant to Penal Code section 667.5, subdivision (b) (making a total commitment of five years). Timely notice of appeal followed.

The challenge to the jury panel was predicated on the underrepresentation of Richmond residents on the jury venire. At the hearing thereof, the substance of the showing was that 6.79 percent of the venire were Richmond residents, that 7.11 percent of the jurors chosen for the week

---

*Assigned by the Chairperson of the Judicial Council.

of May 18, 1981, were Richmond residents, and that the 1980 census showed 11.36 percent of the county's population resides in Richmond. The court ruled that appellant had the burden of showing systematic exclusion, that no showing had been made, and that if there was a disparity, it was not substantial enough to invalidate the jury venire and denied the motion.

On the afternoon of August 6, 1980, vice detail officers of the Richmond Police Department, who had specialized in on-the-job training regarding the packaging and sales of methamphetamines, went to an area where they could observe the activities of appellant. Officer Mussetter, from his vantage point across the street, saw appellant leave a group of four other black males and make "exchanges" with three pedestrians. After the last exchange, he saw appellant put money in his pocket and set a "balled up" brown bag upon the ground next to a cafe. Mussetter directed the other officers, by walkie-talkie, to seize the bag and arrest appellant for sale of drugs. The bag was picked up by Officer Valli and was found to contain 18 small plastic bindles, each sealed with tape. Five samples from these bindles, containing white powder, tested positively for methamphetamine and constituted a usable quantity.

The four males, who were with appellant, all testified that Valli picked up and looked into various bags; one of them heard Valli say, "I can't find it." Each of these persons, friends of appellant, had prior felony convictions.

A private investigator for appellant took films of the scene on May 6, 1981, between 4:25 and 4:40 p.m. purporting to show the view from Mussetter's vantage point to the area of the offense, including traffic on the street.

During trial, appellant moved to have the jury transported to the scene, but the court denied the motion, citing both the difficulty of transporting the jury and the fact that this was the type of case where all the necessary information could be elicited for the benefit of the jury by witnesses. Also, the court opined, the condition of the scene, specifically the motor traffic, would be different than it was on the date and time of the offense.

The motion for a new trial was made on two grounds: insufficiency of the evidence under Penal Code section 1181, and "miscarriage of justice." The court stated that testimony offered by the majority of the

defense witnesses lacked credibility, and concluded, in view of the totality of the circumstances, and from all of the testimony that it could not fault the decision of the jury. The motion was denied.

Appellant's prior criminal record is extensive, with numerous felony convictions and 14 juvenile probation matters. He had been released on parole 34 days before his arrest herein, and had charges pending for an earlier escape (Pen. Code, § 4532, subd. (b)) and robbery.

In selecting the term of imprisonment, the court, disregarding two of the felony convictions, nevertheless chose the aggravated term based on appellant's record as a juvenile and adult offender, as well as the increasing severity of the offenses and his poor performance on probation and parole.

## Issues on Appeal

I. The jury which decided Mooring's case was not a representative cross section of Contra Costa County.

II. Refusal of the defendant's request for a viewing of the area of his arrest was an abuse of discretion and prejudicial under the circumstances.

III. The evidence when considered in its entirety is legally insufficient to prove defendant's guilt beyond a reasonable doubt.

IV. The court improperly considered two of Mooring's prior felony convictions for the purpose of both sentencing Mooring to an aggravated term and enhancing his sentence by two years.

## Discussion of Those Issues

### I

Appellant was not denied his right to an impartial jury. ■ The burden of proof of an alleged class discrimination in the selection of jurors is on the party who asserts that discrimination. (*Patton* v. *Mississippi* (1947) 332 U.S. 463, 466 [92 L.Ed. 76, 79, 68 S.Ct. 184, 1 A.L.R.2d 1286].) But once a prima facie case is presented, the burden then shifts to the state to refute it. (*Whitus* v. *Georgia* (1967) 385 U.S. 545, 550 [17 L.Ed.2d 599, 603-604, 87 S.Ct. 643].) ■ In *Duren* v.

*Missouri* (1978) 439 U.S. 357, 364 [58 L.Ed.2d 579, 586-587, 99 S.Ct. 664], the high court set forth the principle that: "In order to establish a prima facie violation of the fair-cross-section requirement, defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (See also Cal. Const., art. I, § 16; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 266-272 [148 Cal.Rptr. 890, 583 P.2d 748]; *Rubio* v. *Superior Court* (1979) 24 Cal.3d 93, 97-100 [154 Cal.Rptr. 734, 593 P.2d 595].)

Code of Civil Procedure sections 198 and 199 set forth "who is competent and not competent" to act as a trial juror. The court in *Rubio, supra*, recognized that ex-felons and resident aliens are not cognizable groups within the meaning of the representative cross section rule. (P. 100.) Eligibility to serve on petit juries and raw census figures, without breakdown, may not be used as a basis for a showing of systematic discrimination. Figures can be deceptive and hence meaningless, and for that reason the comparison, to be meaningful, must be between those persons *eligible* as a cognizable class to sit as petit jurors and those in that class who are actually called. Richmond residents do constitute a cognizable class. (*People* v. *Spears* (1975) 48 Cal.App.3d 397, 400-403 [122 Cal.Rptr. 93], and cases cited thereon.) *Stephens* v. *Cox* (4th Cir. 1971) 449 F.2d 657, 659 used the ratio between the population of blacks (34 percent) and those on the jury panel (15 percent) and noted that this proportion of two to one demonstrated discrimination but required a showing that a substantial disparity exists between the proportion of *presumptively qualified* Negroes in the general population and their proportion on juries to establish a prima facie case of racial discrimination.

In *Swain* v. *Alabama* (1965) 380 U.S. 202, 208-209 [13 L.Ed.2d 759, 766, 85 S.Ct. 824], blacks constituted 26 percent of the population but 10 percent to 15 percent of the jury panels. The court there said: "We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in the community is underrepresented by as much as 10%." The court in *People* v. *Newton* (1970) 8 Cal.App.3d 359, 390 [87 Cal.Rptr. 394], held that a disparity to make the prima facie case of discrimination must be substantial. There the evidence showed that black persons constituted 7.5 percent of the jury panels and 12.4 percent of the population as a whole

and that this was not so substantial as to establish prima facie evidence of discrimination. ■ In the case at bar, appellant concedes there is no evidence that the disparity was a result of any wilful, deliberate, purposeful, or systematic discrimination by the jury commissioner.

Appellant has failed to sustain his burden of establishing that the representation of Richmond residents on the master jury list or on the venire was other than fair and reasonable.

## II

■ The court properly exercised its discretion in refusing to allow the jury to view the area of the arrest. Penal Code section 1119 provides in pertinent part: "When, in the opinion of the court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, . . . it may order the jury to be conducted in a body . . . to the place . . . ." The grant or denial of a motion to view the scene rests in the sound discretion of the trial court. (*People* v. *Conway* (1962) 207 Cal.App.2d 657, 660 [24 Cal.Rptr. 635].) The burden is on the moving party to affirmatively show that such discretion has been abused. (*People* v. *Wade* (1968) 266 Cal.App.2d 918, 925 [72 Cal.Rptr. 538], cert. den. 395 U.S. 913 [23 L.Ed.2d 226, 89 S.Ct. 1758].)

The court denied a jury view of the scene based on the problems in transportation, possible differences in the traffic conditions, and because the evidence could have been introduced through other witnesses. These are appropriate considerations.

A court may consider whether the conditions to be viewed by the jury are the same as those perceived by the witness. To the extent that the conditions differ, their probative value is substantially diminished. (*People* v. *Brown* (1981) 119 Cal.App.3d 116, 135 [173 Cal.Rptr. 886]; *People* v. *O'Brien* (1976) 61 Cal.App.3d 766, 779-780 [132 Cal.Rptr. 616]; *People* v. *Robinson* (1970) 5 Cal.App.3d 43, 47-48 [84 Cal.Rptr. 796].)

Two defense witnesses said the traffic was pretty much the same every Wednesday "about that time." Officer Mussetter said the traffic conditions differ daily and vary at different times of the day and on different days of the week, and, indeed, testified that the film taken by appellant's investigator on a Wednesday differed from the traffic he

himself observed on Wednesday, the day of the offense. The evidence was introduced from other sources and this was a valid and appropriate consideration in the ruling by the court on the motion to view the scene. (*People* v. *Burciago* (1978) 81 Cal.App.3d 151, 169 [146 Cal.Rptr. 236], cert. den. 439 U.S. 1131 [59 L.Ed.2d 92, 99 S.Ct. 1051].) Hence, it cannot be said that the denial of the view of the premises constituted an abuse of discretion.

## III

The court properly denied the motion for a new trial. Such motion is also addressed to the sound discretion of the trial court, which is required to independently weigh the evidence, and whose discretion will not be disturbed in the absence of a showing of abuse. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289]; *People* v. *Marchialette* (1975) 45 Cal.App.3d 974, 983 [119 Cal.Rptr. 816].) The trial court must consider the probative force of the evidence and satisfy itself that the evidence, as a whole, is sufficient to sustain the verdict. (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14].) A judgment supported by the testimony of a witness who has not been discredited and whose testimony is not inherently improbable will be affirmed. (*People* v. *Johnson* (1960) 187 Cal.App.2d 116, 122 [9 Cal.Rptr. 571].) In the case at bar, the trial court considered all the conflicts in the evidence and resolved them against defendant. (*Johnson, supra*, at p. 122.) We find no error as claimed.

## IV

Appellant was properly sentenced. Penal Code section 1170, subdivision (b) and California Rules of Court, rule 441, prohibit the use of the same fact to aggravate a sentence and to enhance the term. (See also *People* v. *Lawson* (1980) 107 Cal.App.3d 748, 757 [165 Cal.Rptr. 764].) The court clearly stated that it was not relying on the two state prison priors in arriving at the aggravated term. The case of *People* v. *Jardine* (1981) 116 Cal.App.3d 907, 924 [172 Cal.Rptr. 408], is instructive. There, in arriving at the aggravated term, the court mentioned defendant's leadership in the offense, his involvement in the planning and preparation, and his prior convictions. The first two elements were appropriate enhancements but the priors were not.

In the case at bar, the court expressly declined to consider the two prior felonies to enhance. Appellant had suffered three additional felo-

nies, and commitment to the Youth Authority, and had an extensive juvenile record and two pending felonies. He was unsuccessful on juvenile probation, his adult probation was revoked, and he had been paroled 34 days prior to the instant offense. Clearly, each of the elements articulated in aggravating the term is present without reference to the two felonies used as enhancements. The court did not err in sentencing appellant.

The judgment of conviction is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.