[No. D008113. Fourth Dist., Div. One. June 27, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE WILLIAM COX, Defendant and Appellant.

**COUNSEL**

Andrew S. Richter for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Pat Zaharopoulos and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FROEHLICH, J.**—A jury found Dale William Cox guilty of attempted burglary: an attempt to enter an inhabited dwelling for the purpose of committing rape (violation of Pen. Code,[1] §§ 664 and 459). In nonjury

---

[1] All statutory references are to the Penal Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

hearings the court found Cox to have been sane at the time of the crime, denying his plea of insanity; and also found the allegation of a prior conviction (assault with intent to commit rape) to be true. Cox was sentenced to prison for the midterm of two years with an additional five years for the prior conviction, a total term of seven years. Cox appeals, alleging (1) error in receiving in evidence admissions not voluntarily given; (2) error in failing to give, sua sponte, an instruction on voluntary intoxication; and (3) insufficient evidence to support the conviction of burglary. We find no error and affirm.

## FACTS

The attempted entry into the residence occurred at the patio entrance to the condominium of Mr. and Mrs. Paul Brackman in Carlsbad, at around 2:30 a.m. Cox's attempt to open the sliding glass door activated a burglar alarm, awakening the Brackmans. When Mr. Brackman investigated he found Cox, naked, sitting in a chair outside the condo. While Mrs. Brackman called the police, Mr. Brackman engaged Cox in conversation. When asked what he was doing, Cox said he was chasing, or was being chased by, the devil. They discussed the weather, the location of Cox's residence and the fact that he had been walking his dog on the beach. At one point Cox took off his ring and some jewelry and placed them on a table next to him.

The police arrived within a few minutes. Officer Sutt observed Cox and conversed with him, after first giving him the *Miranda* admonishment. Although Cox told Sutt he had taken methamphetamine, Sutt concluded Cox was not under the influence of drugs because of his appearance and calm demeanor. Noting Cox's nakedness and wet footprints near the adjacent condominium pool, Sutt inquired of Cox as to his activities. Cox told him he had jumped the condo fence, taken off his clothes, dipped in the pool to wash, and then had gone upstairs to attempt entry into the Brackmans' apartment. The officer asked Cox if he planned to have sex with the woman inside, and Cox replied, "Yes, probably." The officer then said he thought Cox was planning to go inside and rape the woman, and Cox replied, "Yeah, I had a hard on."

Cox testified that he had injected methamphetamine the evening before the incident; that he was walking on the beach near the condominium complex when he became frightened by a red light over the ocean; that he experienced religious premonitions and climbed the wall into the condo pool area because he was being pursued by devils and thought he saw God in one of the complex's windows. He said he immersed himself in the pool to baptize himself and cleanse his body. He tried to enter the Brackmans' apartment because he thought God was inside, and when the alarm went off

he felt safe because "they" then knew he was there. He had no reason to flee because he had come to save himself rather than for any improper purpose.

DISCUSSION

1. *Admission of Defendant's Statements*

■ Cox contends the evidence establishes that at the time of the police interrogation he was under the influence of methamphetamine and as a result was incapable of exercising rational free will. His incriminating admissions were thus involuntary and should not have been received in evidence. The determination to admit this evidence was made after an Evidence Code section 402 hearing outside the presence of the jury. The court heard evidence from Officer Sutt to the effect that Cox did not appear to be under the influence of drugs, and also that Sutt in no way coerced Cox to speak. Cox testified relative to his ingestion of methamphetamine and his delusional and hallucinatory state at the time, and also introduced testimony of a psychiatrist who described Cox's psychotic state. The court advised that it was adopting a standard of proof of voluntariness requiring proof beyond a reasonable doubt, and declared, "There is no doubt in my mind there was a free and voluntary confession."[2]

■ The role of the appellate court in reviewing a trial court's determination of the voluntariness of an admission is " ' "to examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found . . . ." ' " (*People* v. *McClary* (1977) 20 Cal.3d 218, 227 [142 Cal.Rptr. 163, 571 P.2d 620].) Where there is conflicting evidence, however, the appellate court must accept the version of events which is most favorable to the prosecution. (*People* v. *Belmontes* (1988) 45 Cal.3d 744, 773 [248 Cal.Rptr. 126, 755 P.2d 310].) A trial court's resolution of such conflicts will be upheld unless it is " 'palpably erroneous.' " (*People* v. *Kane* (1984) 150 Cal.App.3d 523, 530 [198 Cal.Rptr. 73], cited in *People* v. *Hendricks* (1987) 43 Cal.3d 584, 589 [238 Cal.Rptr. 66, 737 P.2d 1350].)

■ Our review of the evidence introduced at the Evidence Code section 402 hearing convinces us of the correctness of the court's ruling. There was no evidence of coercion on the part of Officer Sutt. His questioning was

---

[2] We note that since the date of the superior court's ruling our Supreme Court has determined that the proper standard of proof of voluntariness is by a preponderance of the evidence, rather than proof beyond a reasonable doubt. (*People* v. *Markham* (1989) 49 Cal.3d 63, 65, 71 [260 Cal.Rptr. 273, 775 P.2d 1042].) Since the standard utilized by the court was an error favoring the defendant, requiring a greater burden of the prosecution than has since been established, the error is obviously harmless as to the defendant.

short and simple, addressed in the relaxed atmosphere of the condominium pool patio. Cox had not been arrested, or even detained. The fact that the questions were somewhat leading does not equate to a conclusion that they were coercive.

The thrust of Cox's argument, however, is not that the police were coercive, but that his mental condition was such as to preclude a knowledgeable and voluntary decision to make incriminating statements. Exclusion of evidence on this ground was conclusively rejected by the United States Supreme Court in *Colorado* v. *Connelly* (1986) 479 U.S. 157, 164-167 [93 L.Ed.2d 473, 482-485, 107 S.Ct. 515]. The defendant in that case claimed his incriminating statements were not voluntary because of his psychotic state. The court emphasized the element of police coercion as the transgression on constitutional rights. ■ ■ ■ ■ ■ The purpose of the exclusionary rule is to deter violations of the Constitution. Where no constitutional violation has occurred, state rules of evidence are appropriate to govern the admissibility of evidence and to guard against false or unreliable evidence.[3]

Earlier authority in California indicated that a confession or admission would be deemed involuntary and inadmissible because of the defective

---

[3] Relying on *Connelly,* Cox urges that state-created standards of "voluntariness" survive Proposition 8. Cox argues Proposition 8 mandates adherence to federal law only when a defendant seeks to exclude otherwise reliable evidence based on misconduct violating constitutional protections, but does not mandate adherence to federal law when evidence is excludable based on the questionable reliability of the evidence itself. Indeed, notes Cox, while the *Connelly* court held some form of coercion is required before Constitutional issues are implicated, *Connelly* specifically preserved to state law the determination whether to exclude noncoerced evidence of questionable reliability.

We can conceive cases in which an admission, although not coerced or otherwise obtained in violation of other constitutional protections, might well be excludable under substantive state law evidentiary provisions. In such circumstance Proposition 8 would not impair state law evidentiary provisions which exclude evidence on nonconstitutional grounds. Thus, evidence of Cox's admission might have been excludable (without reference to federal constitutional protections) under Evidence Code section 352 if it were found to be so unreliable or untrustworthy (i.e., because he was allegedly psychotic when he spoke) that its probative value was outweighed by its prejudicial impact; and *Connelly* would sanction exclusion of the evidence on state law evidentiary grounds even though it was not obtained by coercion in violation of the federal Constitution. (*Connelly, supra,* 479 U.S. at pp. 166-167 [93 L.Ed.2d at pp. 483-485].)

The defect in Cox's position, however, is that he never objected to or sought exclusion of the evidence based on "unreliability" (or on any other nonconstitutional ground), but instead sought to exclude the statement solely on a constitutional ground (i.e., that his mental state precluded him from a free and knowing waiver of constitutional protections). The failure to object to evidence ordinarily waives the right to claim error from its admission. (*People* v. *Karis* (1988) 46 Cal.3d 612, 634 at fn. 16 [250 Cal.Rptr. 659, 758 P.2d 1189].) Moreover, we are satisfied that such an objection, even if made, would have been rejected, since it would have been based on a predicate fact (i.e., a mental disability existing at the time of the statement) which the trial court implicitly rejected both in its ruling on "voluntariness" and in its later ruling on the insanity defense.

mental condition of the defendant, regardless of the existence of police coercion. (See *People* v. *MacPherson* (1970) 2 Cal.3d 109, 115 [84 Cal.Rptr. 129, 465 P.2d 17]; *People* v. *Sultana* (1988) 204 Cal.App.3d 511, 522 fn 5 [251 Cal.Rptr. 115].) We believe this authority, which created a standard of constitutional admissibility higher than the federal standard, is no longer viable. In *People* v. *Markham, supra,* 49 Cal.3d 63, the California Supreme Court construed the effect of the 1982 amendment to the California Constitution (art. I, § 28, subd. (d) called the "truth in evidence law") upon the burden of proof of voluntariness of confessions. Rejecting earlier precedent, the court concluded that the constitutional amendment required conformity to federal standards of admissibility.

While the *Markham* decision dealt with the question of burden of proof of voluntariness, we believe its implication to the resolution of the issue now before us is clear. The court referenced and followed *Colorado* v. *Connelly* in terms of its ruling on burden of proof. (*People* v. *Markham, supra,* 49 Cal.3d at p. 67, fn. 3.) It also restated the rule previously announced in *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] at pages 888-889, which held that Proposition 8 prohibited state courts from creating nonstatutory exclusionary rules except insofar as required by the Fourth Amendment, as construed by federal authority. (*People* v. *Markham, supra,* 49 Cal.3d at p. 68.) We believe the present status of the matter is that we are obliged to follow federal precedent in determining admissibility of confessions or admissions dependent upon the factor of voluntariness. We therefore follow *Colorado* v. *Connelly* and affirm the trial court's ruling of admissibility. (See also *People* v. *Hatt* (1988) 205 Cal.App.3d 1178, 1187 [252 Cal.Rptr. 896].)[4]

### 2. *Failure to Instruct on Voluntary Intoxication*

The court instructed the jury on the effect of mental disease, mental defect or mental disorder (reading CALJIC No. 3.36 (4th ed. 1987 pocket pt.) p. 44), advising that it could impact the jury's determination of the existence of the mental state which is an element of the crime of burglary with intent to commit rape. The court was not asked to give, and it

---

[4] We must note that the court's ruling permitting introduction of evidence of the defendant's statements does not constitute a determination binding on the finder of fact that the statements are reliable. The court instructed the jury as to the nature of a defendant's admissions, and in accordance with the standard CALJIC instruction advised that the jury was the sole judge of whether such statement was true, and that to the extent they found it to be untrue they should reject it. Counsel for the defense urged upon the jury the equivocal nature of the defendant's admissions and the defendant's psychotic state as rendering Cox's statements of intent unreliable. Since the defendant's statement was perhaps the most direct evidence of his mental state at the time of attempted entry of the residence (his intent to rape), the jury presumably rejected such argument by its finding of guilty.

did not give, the instruction on voluntary intoxication (CALJIC No. 4.21 (4th ed. 1987 pocket pt.) pp. 60-61). Cox now contends the court had a sua sponte obligation to give this instruction and that failure to do so constitutes reversible error. Cox's theory is that the evidence strongly indicated his use of methamphetamine, not only upon the basis of his testimony but also because of his bizarre conduct, and that the resulting presumed intoxication should have triggered the instruction.[5]

■ ■■■ ■ ■ We reject this contention.[6] It is the duty of the court to instruct the jury, even without a request from counsel, on the law applicable to the elements of the case and the issues raised by the evidence. (5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2924, pp. 3584-3586.) The obligation, however, is limited to legal principles which are "commonly or closely and openly connected with the facts of the case before the court." (*People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].) Had the defense in this case suggested the possibility of diminished capacity because of "intoxication," the instruction might have been required.

This was not, however, the direction of Cox's defense. His position, both in trial to the jury and in subsequent trial to the court on the insanity plea, was lack of intent because of mental defect. The defense psychiatrist testified that Cox was a psychotic, i.e., he had a "major mental illness, a

---

[5] At the time of the trial CALJIC No. 4.21 provided: "In the crime of _____ of which the defendant is accused [in Count _____ of the information] a necessary element is the existence in the mind of the defendant of the [specific intent to _____] [mental state of _____]. [¶] If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such [specific intent] [mental state]. [¶] If from all the evidence you have a reasonable doubt whether defendant formed such [specific intent] [mental state], you must give the defendant the benefit of that doubt and find that he did not have such [specific intent] [mental state]."

[6] We reach this issue despite the dissent's strenuous protestations that because the attorney general has conceded it was error not to give the voluntary intoxication instruction, there is little justification for even reaching the threshold question of the sua sponte duty to give such instruction. We respectfully disagree with the dissent's protestations, for two reasons. First, our interpretation of the attorney general's argument differs from that of the dissent, as we can find no concession by the attorney general that the voluntary intoxication instruction should have been given sua sponte. To the contrary, the entire thrust of the attorney general's argument is that the jury *was* adequately instructed, i.e., it could consider the impact of Cox's drug ingestion upon his ability to form the required specific intent, in light of the evidence of Cox's expert (and the argument of counsel) that Cox's alleged psychotic condition was tied up with his drug use.

Moreover, even if we agreed with the dissent that the attorney general had conceded the failure sua sponte to give the instruction was error, this court has already declared that erroneous concessions will not divert us from our obligations: ". . . [C]ounsel's erroneous concession cannot and should not prevent this court from applying sound legal principles to the objective facts disclosed by the record." (*Bell* v. *Tri-City Hospital Dist.* (1987) 196 Cal.App.3d 438, 449 [241 Cal.Rptr. 796].)

thinking disorder which was such that he was not in touch with reality." When asked about the effect of drug use the psychiatrist stated he did not know whether Cox was "susceptible" to a psychosis before using drugs or whether his psychosis was the result of chronic drug use, but felt it was probably the latter.

The court in *People* v. *Robinson* (1970) 5 Cal.App.3d 43, 48 [84 Cal.Rptr. 796], dealt with a similar issue: "Appellant's further claim that it was prejudicial error for the court not to instruct the jury on intoxication is also without merit. The circumstances of each case determine whether the failure to instruct constitutes prejudicial error. [Citations.] While the record shows that defendant did not request such instruction or that any requested instruction was refused, the evidence fails to justify the giving of such instruction on the court's own motion. While a trial court on its own motion must instruct the jury with respect to the effect of intoxication on a crime requiring specific intent where evidence of intoxication raises a factual issue [citations], here the evidence of intoxication was minimal and such instruction was unnecessary."

Not only was the sua sponte giving of the instruction not required, but on the facts of this case it may have been error to give it even if requested. The subject instruction refers to a "state of intoxication" but does not define what "intoxication" is. Presumably the lack of definition of "intoxication" derives from the assumption that "intoxication" ordinarily means a state of drunkenness, and that being drunk from ingestion of alcohol is a condition subject to common knowledge. We know what "intoxication" means just as we know what performing an act out of "force or fear" or innumerable other common phrases in instructions mean.

Where the voluntary intoxication instruction is sought in a situation not involving alcohol, however, we conclude it must be supported by evidence advising the manner in which ingestion of the nonalcoholic drug affects the mind of the user. (See *People* v. *Baker* (1954) 42 Cal.2d 550, 562, 572-73 [268 P.2d 705] [expert testimony that drugs ingested would have specific intoxicating effects similar to alcohol required "intoxication" instruction].) These are unusual times, and it is indeed possible that there are those in our society who know full well the effects of the use of various drugs on the human system. We believe, however, that the ordinary juror probably does not have such knowledge. ▆ ▆ ▆ ▆ Based on the lack of expert testimony in this case, it would have been pure speculation for the jurors to determine what impact the ingestion of an undetermined amount of

methamphetamine might have had on Cox's mental capabilities.[7] Indeed, based on the evidence here, the jury could have equally speculated that recent use of methamphetamine may actually sharpen the senses: No one describing Cox found him to be unalert, misdirected, unable to communicate clearly, or otherwise evidencing the symptoms customarily associated with alcoholic intoxication, and we know he scaled two high fences in order to enter the pool area of the condominium complex. In sum, there was no evidence of "intoxication" in the ordinary sense. The giving of an instruction on intoxication would have suggested a state of facts not asserted by the defendant nor supported by the evidence, and would have been error. (Cf. *People v. Watts* (1976) 59 Cal.App.3d 80, 85-86 [130 Cal.Rptr. 601]; *People v. Rodriguez* (1986) 42 Cal.3d 730, 762-763 [230 Cal.Rptr. 667, 726 P.2d 113]; *People v. Williams, supra*, 45 Cal.3d 1268, 1285, 1311; *People v. Frierson, supra*, 25 Cal.3d at pp. 155-157.)

A very similar recent case is found in *People v. Young* (1987) 189 Cal.App.3d 891 [234 Cal.Rptr. 819]. Young was the driver of the vehicle causing a well-publicized accident in Westwood shortly before the 1984 Olympics. His vehicle veered from the street and impacted a number of pedestrians, resulting in his conviction of first degree murder. When arrested, Young's blood and urine samples were negative; in his custodial interview he admitted knowing what he was doing and that it was wrong, but also made a series of bizarre statements reflective of a paranoid schizophrenic. Evidence at trial included a diagnosis of paranoid schizophrenia and susceptibility to hallucinations and bizarre beliefs. (*Id.* at pp. 898-899.) The

[7] The state of the evidence here is similar to the evidence presented in *People v. Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587]. In *Frierson,* the defense presented testimony that on the day of the crime the defendant had consumed an unspecified amount of Quaalude and began acting "kinda dazed in his head, staring," and then later consumed "angel dust" and acted "Spaced out. Just not normal." An officer, who interviewed defendant a few hours after the crime, testified defendant's walk was normal, his speech clear and intelligible, and his eyes neither pinpointed nor dilated. (*Id.* at p. 154.) Rejecting defendant's contention that the failure to give sua sponte a voluntary intoxication instruction was error, the court opined: "In the present case, defendant presented no evidence whatever, expert or otherwise, regarding the intoxicating effect, if any, which his use of undetermined amounts of Quaalude and angel dust may have had upon his ability to form the necessary intent to rob or kill. Nor was the matter shown to be one of common knowledge to an ordinary juror." (*Id.* at p. 156.)

Thus, a sua sponte instruction is not required merely because there is *some* evidence showing *some* amount of *some* intoxicating substance was consumed at *some* point during the day of the crime, even when the "consumption" evidence is buttressed by lay testimony that consumption produced "dazed" or "spaced out" behavior. It is here that we part company with the dissent, which would allow (and, indeed, would *require* sua sponte) an instruction on intoxication without expert testimony based solely on "consumption plus odd behavior." We follow the precedent in *Frierson.* (See also *People v. Williams,* (1988) 45 Cal.3d 1268, 1311-1312 [248 Cal.Rptr. 834, 756 P.2d 221], finding no error in refusing requested voluntary intoxication instruction where supported only by "consumption (of LSD) plus odd behavior" evidence.)

evidence also revealed that he had taken prescription medication several hours before the accident, and that the drug would harm his mental condition by exacerbating his delusions. (189 Cal.App.3d at p. 907.)

The trial court in *People* v. *Young* refused the voluntary intoxication instruction requested by the defendant. In upholding this ruling the appellate court noted the only evidence concerning the use of the drug was that it would exacerbate Young's mental disease, not that the drug use alone (i.e., divorced from Young's mental disease) would produce intoxication. In this setting it concluded that, having given the instruction relating to impairment of mental condition by reason of disease, the instruction on voluntary intoxication was inapplicable. (189 Cal.App.3d at pp. 907-909.)

Cox's case is, we believe, similar to that of *Young*. Cox did not appear "intoxicated" to the witness, nor did any expert testify his drug use (standing alone and without reference to his psychosis) would have produced an intoxicated condition. While the drug use may have acted to trigger his psychotic episode, its use pertained only to its effect on his mental disease rather than establishing "intoxication." The defense was based upon Cox's alleged misconception of place and time. His mental disorder, according to his and his psychiatrist's evidence, led him to believe God was in the apartment and that he, Cox, had to escape devils. This defense is in fact inconsistent with a claim to a befuddled mind and diffuse intent related to intoxication. We therefore conclude the giving of the instruction on mental defect was proper and that no further instruction on the general subject was required.

### 3. *Sufficiency of the Evidence*

Cox contends defects in the evidentiary proof because the corpus delicti of the offense was not established before his admissions were admitted in evidence. He also contends, generally, that the evidence was insufficient to establish perpetration of a burglary.

The rule of proof of corpus delicti requires that the elements of the crime must be established before admissions or confessions of a defendant may be admitted in evidence. The required showing is (1) the injury, loss or harm, and (2) that criminal agency was the cause. The preliminary proof need not be beyond a reasonable doubt, but only a slight or prima facie showing is necessary. (*People* v. *Wong* (1973) 35 Cal.App.3d 812, 839 [111 Cal.Rptr. 314].) There was ample evidence here of the perpetration of the crime before the defendant's statements were admitted. An attempted break-in of the condominium is admitted. That the defendant was the per-

petrator is clear, and a nefarious sexual intent can at least be suspected by reason of his absence of clothing.

■ Respecting the totality of the evidence, we must admit this is not the strongest of cases for establishment of an intent to commit rape. Were we to have been the finder of fact we might well have concluded Cox had no rational intent when he attempted to enter a strange apartment, without clothing or weapons, not knowing who might be within. ■ It is not our province, however, to weigh the evidence. We are obliged to uphold the jury verdict if it is supported by any substantial evidence, viewed in the light most favorable to the prosecution. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 575-579 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) ■ Both the jury and the court were presented with opportunities to exonerate the defendant from criminal culpability, either completely or partially, based upon his alleged drug-induced hallucinations. Neither the jury nor the court accepted this defense. Both jury and court heard all evidence and viewed the witnesses, including Cox. The evidence which they apparently accepted was clearly sufficient, if believed, to result in their conclusion he was guilty as charged.

## DISPOSITION

The judgment is affirmed.

Todd, Acting P. J., concurred.

NARES, J.—I respectfully dissent from part 2 of the majority opinion for several reasons, not the least of which is the Attorney General has *conceded* the court erred in not instructing with CALJIC No. 4.21. The Attorney General does not state the court correctly failed to give CALJIC No. 4.21, but instead asserts there was no *prejudicial* error because, in the context of the evidence and counsels' closing arguments, "the jury would surely know that an issue before it was whether appellant's drug ingestion caused him to lack the requisite specific intent for burglary."

Rather than accepting this admission and assessing the prejudicial impact of the error, the majority not only ignores the admission but stands it on its head, asserting, "Not only was the sua sponte giving of the instruction not required, but on the facts of this case it may have been error to give it even if requested."

There are few circumstances which justify relieving any party, much less the Attorney General, from an admission in its brief. Contrary to the majority's suggestion, reviewing courts do not, and in *Bell* v. *Tri-City Hospital*

*Dist.* (1987) 196 Cal.App.3d 438 [241 Cal.Rptr. 796] this court did not, hold counsel's admissions are never to be treated as controlling. "An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 482, p. 472, italics in original.) " '[W]hile briefs and argument are outside the record, they are reliable indications of a party's position on the facts *as well as the law,* and a reviewing court may make use of statements therein as admissions against the party.' " (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1019, fn. 3 [242 Cal.Rptr. 368], quoting 9 Witkin, *supra,* at § 251, p. 258, italics added.) The Supreme Court has relied upon statements at oral argument to show that the only proper ground for an action does not exist. (*Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 599 [107 P.2d 1, 131 A.L.R. 276].) In *Bell,* this court recognized admissions are frequently binding, but declined to apply that rule where it would inequitably operate in favor of the government in a Tort Claims Act case. (*Bell* v. *Tri-City Hospital Dist. supra,* 196 Cal.App.3d at pp. 449-450.) Unlike the situation in *Bell,* here the majority relieves the government of its admission in a situation not at all analogous to the claim filing requirements of a Tort Claims Act case. In any event, given the infrequency with which the Attorney General concedes trial court error, at the very least it should strongly caution against a different result. Moreover, even if we were prepared to ignore the admission, in my view the court should have given a sua sponte instruction on voluntary intoxication.

Cox's defense was he did not have the specific intent to rape. CALJIC No. 4.21 should be given where drug intoxication evidence supports a defense of lack of specific intent. (*People* v. *Reza* (1981) 121 Cal.App.3d 129, 132 [175 Cal.Rptr. 126].) It must be given sua sponte where there is an evidentiary basis for the defense. (*People* v. *Robinson* (1970) 5 Cal.App.3d 43, 48 [84 Cal.Rptr. 796].)

Without any authority or analysis the majority declares "intoxication," as it appears in CALJIC No. 4.21, "means a state of drunkenness" (maj. opn., *ante,* at p. 989) and would refuse the instruction to Cox because he was not drunk and offered no evidence about any effects of methamphetamine. The majority's assumption that " 'intoxication' ordinarily means a state of drunkenness" (*ibid.*) is unfounded and too narrow. Intoxication describes the debilitating effect of drugs (including alcohol) on the mind and body. A person intoxicated from alcohol might stumble and stammer; one intoxicated from methamphetamine might be able to walk a straight line and normally converse, all while hallucinating he is about to meet God. The fact Cox displayed none of the symptoms normally associated with alcohol intoxication is irrelevant because he was not and never claimed to be "drunk."

Citing *People* v. *Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587], the majority would deny Cox the voluntary intoxication instruction because "it would have been pure speculation for the jurors to determine" the impact of Cox's having thrice injected himself with methamphetamine on the day of the offense. I agree with the majority that CALJIC No. 4.21 need not be given sua sponte where the evidence would only lead a jury to speculate about the effect of the drug upon the defendant's ability to form the requisite specific intent. However, on this record, there was ample evidence about the effect of methamphetamine to require giving the instruction.[1]

Richard Rappaport, a psychiatrist, testified amphetamines produce both physical and psychological symptoms producing "behavioral changes" and distorting the user's "way of thinking." Moreover, here Cox's behavior was so bizarre it alone would support giving the instruction. Cox testified he injected methamphetamine and, while naked and wet, sat on patio furniture outside the premises he had allegedly attempted to burglarize with the intent to rape, waiting to be led to God, all while an audible alarm sounded, took off his jewelry to rid himself of his "earthly possessions," and calmly made small talk with the husband of his intended rape victim while police responded. At trial Cox testified he had been taking methamphetamine for five years, and two days before the incident he had seen "angels and Pegasus . . . in the sky preparing for war." John Hennessy, who was with Cox earlier that night, testified when Cox left Hennessy's apartment "he was talking to me about good and evil and God and Satan and things of that nature and he was under kind of a paranoid trip." While in the police department's holding cell, on several occasions Cox "was making eagle sounds, trying to call up the Lord."

Cox was either incredibly inept, or was intoxicated. For this reason, the majority's reliance on *People* v. *Young* (1987) 189 Cal.App.3d 891 [234

---

[1] Interestingly, the trial court in *People* v. *Frierson did* instruct the jury about the effect of voluntary intoxication upon the defendant's ability to form the specific intent necessary for robbery. (*People* v. *Frierson, supra,* 25 Cal.3d at p. 155 ["Taken as a whole, the instructions were fully adequate to focus the jurors' attention upon the question whether defendant's intoxication may have prevented him from forming the requisite specific intent to commit robbery."].) *People* v. *Williams* (1988) 45 Cal.3d 1268 [248 Cal.Rptr. 834, 756 P.2d 221], also cited by the majority, is inapposite. There, the only relevant evidence was the defendant "may" have ingested LSD and was "making facial expressions," was "jumpy" and was "changing the tone of his voice." The defendant's conduct—shooting his robbery victim— was nothing close to Cox's behavior. The defendant's conduct in *Frierson* was similar—he shot his robbery victim. As antisocial, depraved and criminal as such acts are, they are not bizarre or "odd" in the sense Cox's conduct is. Contrary to the majority's statement in footnote 3 of its opinion, in my view neither *Frierson* nor *Williams* have "rejected" the need to give CALJIC No. 4.21 where there is "consumption plus odd behavior" because neither of those cases involve "odd" behavior of the type at issue here.

Cal.Rptr. 819] for a contrary result is misplaced. There, the defendant's blood, breath and urine samples revealed *no* alcohol or drugs in the defendant's body. (*Id.* at p. 896.) Moreover, with respect to the only drug he had taken, Triavil, the defendant testified it had *no effect* on him. (*Id.* at p. 897.) Not surprisingly, on these facts the court in *Young* properly refused to instruct on voluntary intoxication. In contrast, here Cox testified he injected methamphetamine and thereafter began hallucinating. Cox testified that when he injected methamphetamine he could "be flying with the best." Accordingly, the court had a sua sponte obligation to give CALJIC No. 4.21 as well as No. 3.36. The evidence supported a theory Cox was intoxicated, even though his intoxication may not have risen to the level of a mental illness.

This result is so compelling the Attorney General commendably does not contend to the contrary. Instead he asserts the error was not prejudicial because it would "be ridiculous to suggest the jury would ignore this [intoxication] evidence in considering [Cox's] mental state."

In assessing prejudice, the instructions should be considered in light of their reasonable meaning and the evidence. Here, the jury could well have rejected testimony Cox was psychotic, but believed Cox was grossly intoxicated. Cox's habitual methamphetamine abuse was undisputed. Although police testified to the contrary, the circumstances of the crime itself suggest Cox was in less than full command of his senses.

However, by instructing the jury only mental illness could negate specific intent, the jury would be compelled to convict despite a well-grounded finding that Cox's voluntary intoxication prevented him from forming the specific intent to rape. Moreover, the prejudicial effect of only instructing with CALJIC No. 3.36 and not also with No. 4.21 is exacerbated by its negative implication. A jury expressly instructed to consider one factor— mental illness—to negate intent would reasonably conclude other factors— including voluntary intoxication not amounting to psychosis—could not be considered to negate intent.

Penal Code section 22, subdivision (a), states the general rule, "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." Much like the incantation, "Ignorance of the law is no excuse," I suspect jurors walk into court with an understanding of section 22, subdivision (a): being intoxicated is no excuse. Without an instruction specifically directing the jury it could consider voluntary intoxication, compounded by the negative implication of CALJIC No. 3.36 that nothing other than mental illness can be considered as affecting specific intent, the instructions were tantamount to those which

told the jury to ignore, as legally irrelevant, evidence Cox was intoxicated but not mentally ill. Such error is prejudicial under any standard.

Based upon the foregoing, I would reverse without reaching the other issues addressed by the majority.