Filed 5/7/13  P. v. Pitones CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G045991 |
| v. | (Super. Ct. No. 10HF0921) |
| MIGUEL PITONES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed.

Mark J. Werskman and Kelly C. Quinn for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Miguel Pitones was found guilty of second degree robbery with an enhancement for personally using a firearm during the crime. His arguments on appeal pertain mainly to the gun enhancement. Particularly, he argues: 1) His confession about having a gun during the robbery should have been excluded as involuntary; 2) the prosecutor engaged in prejudicial misconduct; and 3) there is insufficient evidence he actually used a firearm. Finding his arguments unmeritorious, we affirm the judgment.

FACTS

Kelvis Do and Jorge Arroyo were talking outside their workplace one afternoon when appellant and Julio Chavez approached them and drew handguns. They pointed their guns at Do and Arroyo and ordered them to get on the ground. Before Do and Arroyo could comply, Chavez pushed Do's head down onto a table, and appellant took Arroyo's wallet and iPod. Chavez then took Do's phone and wallet, shoved him to the ground and demanded his wedding ring. Do refused at first, but he gave up the ring after Chavez pressed his gun against Do's head. After that, Chavez and appellant fled the scene, and Do called the police.

The next day, the police questioned Arroyo and learned he worked with the robbers to set Do up. His statements led them to investigate appellant, who agreed to talk to a police investigator by phone. Appellant initially denied any involvement in the robbery. However, after the investigator bluffed that the crime was recorded by a surveillance camera, appellant admitted he participated in the robbery and agreed to meet with the police.

Later that day, Police Detective Kyle Turner contacted appellant at his home. He Mirandized appellant and questioned him in the back of his squad car. Appellant said his friend Chavez told him he was planning a robbery in Irvine. Appellant agreed to give Chavez a ride, and on his way to pick him up, he ran into another friend, Jesse Cabrera. He told Cabrera about the robbery, and Cabrera volunteered to come along. Appellant then picked up Chavez, who brought along two handguns.

2

Explaining how the robbery transpired, appellant told Turner that Chavez gave him one of the handguns, which he put in his waistband. Cabrera stayed in the car while appellant and Chavez went around the back of a business and saw Do and Arroyo. Appellant drew the gun from his waistband and held it at his side; the weapon was visible, but he did not point it at anyone. At Chavez's direction, appellant robbed Arroyo while Chavez robbed Do. They left the scene, split the cash and threw Do's wallet and phone onto the freeway. Chavez told appellant not to throw out Arroyo's belongings, and at that point, appellant realized Arroyo was in on the robbery.

Appellant told Turner he didn't know why he participated in the robbery; he just wasn't thinking. When Turner asked him if anyone forced him to participate in the crime, appellant said no.

At trial, appellant told a different tale. He claimed that shortly before the robbery, he told Chavez he wanted to abandon the plan. However, Chavez glared at him, so he went along with it. He also claimed he left his gun in the car during the robbery. When they returned to the car afterwards, Chavez got angry at him for this — it meant appellant would not have been able to back him up if something had gone wrong during the robbery. Chavez was also worried about appellant getting off easier than him if they were arrested for the robbery. He told appellant they should "go down the same," and if appellant didn't tell the police they both used a gun, he would come after him and something would happen to him. According to appellant, that is why he told the police he had a gun during the robbery.

I

Appellant contends his confession to the police about having a gun during the robbery should have been excluded as involuntary because it was the product of Chavez's threats, not his own free will. We disagree.

Under the due process clauses of the Fifth and Fourteenth Amendments, a confession will be deemed involuntary, and thus inadmissible, when the totality of the

3

circumstances shows the defendant's will was overborne such that he or she did not freely choose to confess. (*Colorado v. Connelly* (1986) 479 U.S. 157 (*Connelly*).) However, in this case, appellant did not object to the admission of his confession at trial, raising the prospect of waiver or forfeiture.[1]

There are some older cases that have allowed the issue of the voluntariness of a confession to be raised for the first time on appeal. (See, e.g., *In re Cameron* (1968) 68 Cal.2d 487, 503 [where confession was involuntary "as a matter of law"]; *People v. Underwood* (1964) 61 Cal.2d 113, 126 [where there was uncontradicted evidence of coercion]; *People v. Millum* (1954) 42 Cal.2d 524, 526-527 [same]; *People v. Hinds* (1984) 154 Cal.App.3d 222, 236 [where trial court considered *Miranda* objection to same statements].) But the modern trend is to require an objection in the trial court as a prerequisite to appellate review. (See, e.g., *People v. Williams* (2010) 49 Cal.4th 405, 435; *People v. Rundle* (2008) 43 Cal.4th 76, 121, overruled on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Ray* (1996) 13 Cal.4th 313, 339; *People v. Mayfield* (1993) 5 Cal.4th 142, 172.) We conclude the point was forfeited.

But even if it had been preserved, appellant's claim fails on the merits because California law does not recognize third party threats as a basis for excluding a confession on due process grounds. California courts used to entertain due process claims based on threats and violence by third parties. (See, e.g., *People v. Haydel* (1974) 12 Cal.3d 190 [store security guard coerced defendant]; *People v. Berve* (1958) 51 Cal.2d 286 [civilian severely beat defendant], overruled on other grounds in *People v. Cahill* (1993) 5 Cal.4th 478; *People v. Brown* (1981) 119 Cal.App.3d 116 [civilian threatened defendant and his family].) But that is no longer the case.

---

[1]     "Although the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court is often referred to as a 'waiver,' the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the "'intentional relinquishment or abandonment of a known right."' [Citations.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

In 1986, the United States Supreme Court held in *Connelly* that a confession can only be deemed involuntary if it is the result of "coercive police activity." (*Connelly, supra,* 479 U.S. at p. 167.) The high court made it clear that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." (*Id*. at p. 164, fn. omitted.) Even "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." (*Id.* at p. 166.)

This ruling is dispositive here because the California Constitution's truth-in-evidence provision forbids the exclusion of relevant evidence except to the extent permitted by state statute or required by the federal Constitution. (Cal. Const., art I, § 28, subd. (f), par. (2); *People v. May* (1988) 44 Cal.3d 309, 311, 319-322.) Given this provision and the United States Supreme Court's decision in *Connelly*, a defendant can no longer challenge his confession on voluntariness grounds in state court unless it is the product of *police* coercion. (*People v. Smith* (2007) 40 Cal.4th 483, 502; *People v. Maury* (2003) 30 Cal.4th 342, 388; *People v. Cox* (1990) 221 Cal.App.3d 980, 985-987.)

In this case, appellant contends Chavez, not the police, coerced his confession. Because his confession was not induced by police conduct, its admission at trial did not violate due process.

II

Appellant also contends the prosecutor engaged in several instances of prejudicial misconduct. We do not believe that to be the case.

In general, a prosecutor commits misconduct when his or her behavior involves "deceptive or reprehensible methods of persuasion" or it "'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.]" (*People v. Doolin, supra,* 45 Cal.4th at p. 444.) "What is crucial to a claim of prosecutorial misconduct is not the good faith *vel non* of the prosecutor, but the potential injury to the

5

defendant. [Citation.]" (*People v. Benson* (1990) 52 Cal.3d 754, 793.) Misconduct that undermines the defendant's federal constitutional rights compels reversal unless it is harmless beyond a reasonable doubt (*People v. Lenart* (2004) 32 Cal.4th 1107, 1130), whereas misconduct that implicates state law requires reversal only if it is reasonably likely the defendant would have obtained a more favorable verdict had the misconduct not occurred. (*People v. Navarette* (2003) 30 Cal.4th 458, 515.)

Initially, we note that appellant forfeited his right to raise the issue of prosecutorial misconduct on appeal because he did not object to any of the alleged misconduct in the trial court. (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.) Appellant relies on the futility exception to the forfeiture rule, but we are unconvinced by his claim that challenging the alleged misconduct below would have been a useless gesture. At the very least, the trial court would have been able to assess whether a curative instruction was appropriate had a proper objection been made. In any event, we are not persuaded that any prejudicial misconduct occurred in this case.

Appellant's first alleged instance of misconduct relates to the confession he made to Police Detective Turner. Although the confession was recorded, the prosecution did not seek to admit the recording into evidence; instead it elicited the contents of the confession through Turner's testimony. In closing argument, defense counsel implied this was fishy, commenting "it would be nice to have [heard the tapes] to judge the timbre [and] the tone of [appellant's] voice." Responding to this in his rebuttal argument, the prosecutor claimed, "Detective Turner described everything that was on [the tapes]. There's nothing controversial. You heard what's on those tapes. If something were helpful to the defense, he would have been more than happy to play it for you." The prosecutor also told the jury, "There's nothing that you are not hearing. There's nothing hidden from you."

Appellant argues that by referencing the tapes in this fashion, the prosecutor alluded to facts that were outside the record and improperly corroborated

Turner's testimony by personally assuring the jury there was nothing on the tapes that contradicted his testimony. However, Turner himself testified that he fully and accurately described to the jury everything that was on the tapes, so the prosecutor's remarks were a fair comment on the evidence. Viewing the remarks in context, it appears the prosecutor was simply pointing out the defense had as much right to play the tapes for the jury as the prosecutor did. It is not improper for a prosecutor to comment on the defense's failure to introduce material evidence. (*People v. Medina* (1995) 11 Cal.4th 694, 755; *People v. Woods* (2006) 146 Cal.App.4th 106, 112.)

Moreover, the court instructed the jurors that "[n]othing the attorneys say is evidence" and that they must decide the case "based only on the evidence that has been presented." (CALCRIM Nos. 222, 200.) We presume the jurors followed these instructions and relied on the evidence adduced at trial, as opposed to the arguments of counsel, in convicting appellant. (*People v. Morales* (2001) 25 Cal.4th 34, 47; *People v. Sanchez* (1995) 12 Cal.4th 1, 70.)

The next issue is whether the prosecutor broached the issue of punishment in closing argument, which would be improper. (See *People v. Thomas* (2011) 51 Cal.4th 449, 486; *People v. Holt* (1984) 37 Cal.3d 436, 458.) The prosecutor told the jurors that any "thoughts of sympathy, feeling bad for [appellant] because he made a bad choice, none of those things are consideration[s] you can take back there. The judge gets to consider that. She gets to consider what weight to give that if you find him guilty." "Again, decisions like that, sympathy, the bias, his thoughts, his feelings, what he's learned from it all, that's for the judge to consider."

Appellant suggests that by implying the judge might be lenient at sentencing, the prosecutor improperly influenced the jury to find him guilty. He also contends the judge really didn't have any discretion in sentencing him because the gun use enhancement carried a mandatory consecutive 10-year prison sentence. (Pen. Code, § 12022.53, subds. (b), (g) & (h).) However, the judge did have discretion to consider

7

mitigating factors in sentencing appellant on the robbery (Cal. Rules of Court, rule 4.423), so the prosecutor's statements were not misleading. Although prosecutors are best advised to steer clear of the topic of sentencing altogether in making their arguments to the jury, it appears the challenged statements were simply intended to remind the jury to stick to the evidence and not to be swayed by external factors in reaching its decision. We do not believe that the statements improperly interjected the issue of punishment into deliberations or that there is any chance appellant would have obtained a more favorable verdict in their absence.

Appellant's next allegation of misconduct relates to the method by which the prosecutor cross-examined him. Given that appellant's testimony differed from Do's with respect to whether appellant had a gun during the robbery, the prosecutor asked appellant several times whether Do was correct in terms of describing the circumstances of the robbery and whether he disagreed with Do's testimony. Appellant contends this questioning was improper because it was tantamount to asking him to speculate about whether Do was lying.

Asking a witness if another witness is lying "should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. However . . . a court may permit such questions if the witness . . . has personal knowledge that allows him to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*People v. Chatman* (2006) 38 Cal.4th 344, 384; accord, *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 319.) Here, the prosecutor merely asked appellant if he disagreed with Do and thought Do's testimony was correct. He did not question appellant in the more inflammatory and argumentative manner by asking him if Do was lying. Furthermore, appellant had personal knowledge of the circumstances of the robbery and therefore could have aided the jury by explaining why Do may have failed to accurately perceive what happened. The challenged questions were not improper.

8

Appellant also contends the prosecutor improperly trivialized the burden of proof. Misstating the law, especially the burden of proof, is misconduct. (*People v. Marshall* (1996) 13 Cal.4th 799, 831.) But in this case, the prosecutor explicitly acknowledged he had the burden of proving each element of the charges beyond a reasonable doubt, and this was reiterated in the court's instructions as well. The prosecutor did tell the jurors the "only issue" they had to consider was whether appellant used a gun. However, considering appellant confessed to participating in the robbery, this statement was a fair comment on the evidence. It was not an invitation for the jury to disregard the burden of proof on any of the charges, so it was not improper.

III

Lastly, appellant claims there was insufficient evidence to show he personally used a firearm during the robbery. This claim also fails.

In addressing a claim of insufficient evidence in a criminal case, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Prince* (2007) 40 Cal.4th 1179, 1251, citations and internal quotations omitted.) When, as here, the record contains conflicting testimony, we must defer to the jury's credibility determinations unless a witness's statements are inherently improbable or physically impossible. (*People v. Thompson* (2010) 49 Cal.4th 79, 124-125; *People v. Ennis* (2010) 190 Cal.App.4th 721, 728-729.)

Penal Code section 12022.53 mandates a 10-year sentence enhancement whenever the defendant "personally uses a firearm" in the course of a felony such as robbery. (Pen. Code, § 12022.53, subds. (a), (b).) For purposes of this section, personal use means firing or hitting someone with a firearm, or intentionally displaying a firearm in a menacing manner. (CALCRIM No. 3146.)

9

When questioned about the robbery, appellant told Turner he drew a gun and "definitely" held it where Do and Arroyo could see it. Furthermore, Do testified repeatedly that both appellant and Chavez pointed guns at him. During his testimony, Do did acknowledge he was not focused on the robbers' faces, and he was only 70 percent sure appellant was one of the robbers. However, any uncertainty Do had in terms of identifying appellant is of little consequence because appellant admitted he was one of the robbers. Do expressed no doubt that both robbers pointed their guns at him.

Do's testimony on this point was neither inherently improbable nor physically impossible. To the contrary, it was actually corroborated somewhat by appellant's own confession. It is clear that in coming to its verdict, the jury necessarily rejected appellant's trial testimony he did not use a gun, and we are not at liberty to second-guess that credibility determination on appeal. Viewing the record as a whole, and in favor of the judgment, there is substantial evidence to support the jury's finding appellant personally used a firearm by intentionally displaying it in a menacing manner during the robbery. We have no occasion to disturb the jury's finding in that regard.

## DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.

10